14145

SMITH v. PEEPLES *ET AL.*

(181 S. E., 653)

*Mr. George Warren,* for appellants,

480

*Messrs. Randolph Murdaugh* and *Augustine T. Smythe,* for respondent,

October 7, 1935.

The opinion of the Court was delivered by Mr. Justice Bonham.

This action, commenced in the Court of Common Pleas for Hampton County, is a suit by the plaintiff, W. W. Smith, against Thomas R. Peeples, Walter C. Peeples, and Thornwell K. Peeples, as executors of the estate of Homer H. Peeples, as defendants, for the purpose of recovering judgment against the defendants in the sum of $2,500.00, on account of services alleged to have been rendered by the plaintiff for the defendants in procuring the sale of certain timbered lands situated in the said County of Hampton. In his complaint the plaintiff alleged:

"1. That the defendants are now and at the times hereinafter mentioned were executors under the will of Homer H. Peeples, which will is dated 5th day of September, 1914, and was duly admitted to probate in the Probate Court for Hampton County, South Carolina, on the 30th day of December, 1930, at which time the defendants qualified as executors as aforesaid and are now such executors.

"2. That during the early part of the year 1934, the defendants as executors as aforesaid and acting under the authority conferred upon them under the will, requested the plaintiff to find for them a purchaser for and to effect the sale of certain timber and timber lands, situated in Hampton County, South Carolina.

"3. That thereupon and in accordance therewith, the plaintiff took up actively the matter of finding a purchaser

for and effecting the sale of the said property, and succeeded after negotiations in effecting the sale of the same to Graham-Lee Lumber Co., Inc. a Georgia corporation, which has purchased the same.

"4. That the purchase price of the said property was Fifty Thousand ($50,000.00) Dollars.

"5. That the fair value of the services rendered by the plaintiff to the defendants as hereinabove set forth is five per cent. (5%) of the purchase price or Twenty-five Hundred ($2,500.00) Dollars.

"6. That the plaintiff. has made demand upon the defendants for payment of the said sum and they have refused to pay the same."

In their answer the defendants admitted the allegations in Paragraphs 1 and 4 of the complaint, but denied the remaining allegations of the complaint and asked that the same be dismissed.

Issues being joined, the case was tried at the fall, 1934, term of said Court, before his Honor, Judge G. B. Greene, and a jury, resulting in a verdict for the plaintiff for the full amount sued for, $2,500.00. Motion by the defendants for a new trial being refused, from judgment entered on the verdict, the defendants have appealed to this Court, upon exceptions, imputing error to the trial Judge in the particulars set out in the exceptions, which will be considered in the order presented:

## Exception 1

"1. His Honor, the presiding Judge, erred, it is respectfully submitted, in refusing to grant the motion for a new trial on the grounds set forth in the record, because the jury was highly prejudiced by reason of questions propounded by Mr. Smythe to the witness, Walter Peeples, and by the conduct and questions of counsel for respondent where the following occurred:

"Mr. Smythe: Do you happen to know that when this contract of sale between you and the Graham-Lee Lumber

Company was about ready to be recorded showing a tract of land of 1,405 acres, if this 'home tract,' was returned at 500 acres and taxes paid on that amount?

"Mr. Warren: If your Honor please, my friend is only asking that question for the purpose of prejudicing the jury in this case and for no other purpose. I object to it because it is irrelevant, redundant and his only purpose is to highly prejudice the jury.

"Mr. Smythe: I just asked him if the 'home tract,' had not been returned at 500 acres and they only paid taxes on it in that amount.

"The Court: I think it is irrelevant.

"Mr. Smythe: Your Honor, please, we think it is competent on the question that the witness has testified that he could not be made to lie.

"The Court: I wll sustain the objection.

"Mr. Warren: I think, your Honor, inasmuch as that has been brought out in the hearing of the jury that the witness should be allowed to explain that. It is patent, your Honor, that the only purpose of counsel is to prejudice the defendants' case.

"Mr. Smythe: I just asked him about it. If he desires to explain it, I would be very glad to hear it.

"The Court: All right, if counsel desires for you to explain it, go ahead.

"Mr. Smythe: If you desire to explain it, go ahead and do so.

"Witness: Just what was that question?

"Mr. Smythe: What I just asked you? How could this 1,405 acres only be returned as 500 acres?"

It will be noted from the language quoted above, showing what took place during the trial, that when objection was raised by counsel for the defendants to the question propounded to the witness, one of the executors, by counsel for the plaintiff, the trial Judge sustained the objection, holding that the testimony was irrelevant, but when counsel for the defendants, evidently after reflection,

asked that the witness be allowed to explain the matter, the trial Judge then stated, "All right, if counsel desires for you to explain it, go ahead," and the witness proceeded to explain. Therefore, the objection was waived and appellants are not now in a position to complain and are not in a position to ask for a new trial on this ruling of the trial Judge.

## EXCEPTION 2

"That the defendants did not receive a fair and impartial trial, and it was error on the part of his Honor, the presiding Judge, it is respectfully submitted, in refusing the motion for a new trial, by reason of the prejudicial remarks and conduct of counsel for the respondent, in the presence of the jury relating to taxes, and statements made to the Court in response to objections, in the presence of the jury, as is set forth in the following quotation from the record."

Instead of quoting the balance of the second exception, we deem it sufficient to state that the balance of the language used by the appellants under this exception is the same as that quoted in the first exception, above given. In this connection, we desire to state that we fail to see in what respect the appellants were prejudiced by the action of the trial Judge, especially in view of the waiver made by the appelants and in requesting that the witness be allowed to explain the matter. The trial Judge certainly could not grant a new trial under this alleged error for, according to our view, the trial Judge committed no error.

## EXCEPTION 3

"That the action being admittedly one in *quantum meruit,* and the only testimony in the case disclosing that any recovery which the plaintiff may have been entitled to was strictly on contract, it was error, it is respectfully submitted, on the part of the presiding Judge, to charge the jury that the plaintiff would be entitled to recover on *quantum meruit.*"

In our opinion, this alleged error cannot be sustained. As contended by the respondent, the plaintiff alleged that the defendants requested the plaintiff to sell the timber for them. There was testimony tending to prove this allegation, but, there being some testimony on the part of the defendants tending to show the contrary, it was proper for the trial Judge to let that question go to the jury, along with the question of what would be a reasonable price for the services rendered by the plaintiff to the defendants. There was testimony on the part of the defendants that they had not engaged the plaintiff and had not agreed to pay him any sum for any services in connection with the sale of the said timber, but there was testimony on the part of the plaintiff, and by others testifying in his behalf, to the effect that the sum of $2,500.00 would be a reasonable sum for the plaintiff to receive. One witness testifying for the plaintiff stated that ten per cent. commission on the price received was a reasonable price and others testified that five per cent. was a reasonable price. The timber having been sold for the sum of $50,000.00, the jury could readily reach the conclusion from the testimony in the case that the plaintiff was entitled to a verdict of $2,500.00. As contended by the respondent, the work by the respondent was undertaken without any agreement as to the value of his services for selling the timber. Therefore, having been requested to perform the services, it was proper to submit to the jury the question of reasonable price for this work. There was, however, testimony on the part of the plaintiff to the effect that after the work had been begun, the defendants, or at least one or more of the defendants, speaking for the said executors, had agreed that five per cent. on the sales would be a reasonable price for the plaintiff's said services. See the following case, cited by respondent, of *Pittman v. LeMaster,* 128 S. C., 98, 121 S. E., 677, 678. In this connection we quote the following from that case:

"This principle is settled beyond question: When the plaintiff sues upon a *quantum meruit,* and proves the serv-

ices and their value, he makes out a *prima facie* case upon the reasonable theory that an implied contract has been established to compensate him for their reasonable value. * * *

"In the case at bar, as stated, there was no contention on the part of the defendant but that the physician satisfactorily and at his request performed the services indicated. The plaintiff therefore established a *prima facie* right to recover the reasonable value of such services, unless that value was fixed by an express contract which the defendant alleged and was under obligation to establish."

In this connection, we call attention to the fact that at the close of the Judge's charge to the jury his Honor asked this question, "Gentlemen, have I overlooked anything?" to which question counsel for appellants made this reply, "Nothing further for the defendants." Therefore, under our view of the case, the appellants are not in a position to complain because the trial Judge did not charge specifically the law as to express contract. In this connection we quote the following from the record showing what further transpired during the charge to the jury:

"Mr. Warren: We will ask the Court to require counsel at this time to state the basis on which they are going to ask for a verdict at the hands of the jury, whether on contract or whether on *quantum meruit?*

"Mr. Smythe: Your Honor please, the complaint alleges that the defendants requested the plaintiff to find for them a purchaser for the sale of the timber in Hampton County.

"The Court: Are you suing now for *quantum meruit?*

"Mr. Smythe: That is the way it absolutely seems to me, and I do not see how the complaint could state otherwise but that.

"Mr. Warren: Then, your Honor please, I have no motion."

Further, as pointed out by the respondent, the appellants made no objection to the evidence regarding the express contract when such evidence was offered and appellants are not now in a position to complain regard-

ing introduction of such testimony. We may further state in this connection that, in our opinion, the evidence was competent anyway.

In the fourth, fifth, and sixth exceptions, the appellants impute error to the trial Judge in charging the following requests presented by the plaintiff:

"1. A broker is entitled to his commissions, if during the continuance of his agency, he is the efficient or procuring cause of the sale, though the actual agreement for the sale is made by the owner without the aid of the broker; and the broker will be regarded the procuring cause if his intervention is the foundation upon which the negotiations resulting in the sale is begun.

"2. A real estate broker is entitled to compensation where a sale is effected during the continuance of the broker's agency, as the result of services on his part which are the efficient or procuring cause of the sale, even though the actual agreement of sale is made by the owner without the aid of the broker, and the broker will be regarded as the procuring cause, if his intervention is the foundation upon which the negotiation resulting in the sale is begun.

"3. A real estate broker is a special agent employed to find a prospective purchaser and to bring him to the owner of the land offered for sale, who contemplates the sale with the purchaser. A broker who has been the efficient or procuring cause of a sale consummated by his principal, is entitled to his commissions."

The charge complained of, in our opinion, was applicable to the testimony adduced on the trial and given in response to the pleadings. Furthermore, under our view of the case, the appellants were not prejudiced by this charge. In this connection, we call attention to the fact that no express contract was alleged in the complaint. In substance, the plaintiff alleged in his complaint that he was requested by the defendants to procure a purchaser for the timber in question, that in compliance with this request he went to work and procured a purchaser, and further, that

the services rendered were worth the sum of $2,500.00. There was some testimony tending to prove these allegations. Therefore, it was proper for the trial Judge to submit these issues to the jury and to charge thereon. Considering the charge as a whole, in connection with the record, the trial Judge committed no error, certainly no reversible error.

The remaining exceptions, 7, 8, 9, 10, read as follows:

"7. The law requiring his Honor, the presiding Judge, to charge the jury the law pertaining to the case, it is respectfully submitted that his Honor, the presiding Judge, was in error in his charge in its entirety, and that the verdict of the jury in response to such charge, and the judgment entered thereon was erroneous and not in accord with the law, for that neither the will introduced in evidence as Exhibit 'A', nor any powers devolved upon executors in their respective capacity, conferred either the right to contract for the sale of lands or timber on lands, nor does the law or the will impose any liability on such executors for services rendered to such executors in *quantum meruit*.

"8. It is respectfully submitted that the jury was greatly prejudiced, and that the defendants did not have a fair and impartial trial, for that his Honor, the presiding Judge, it is respectfully submitted, erroneously held in his general charge to the jury that the executors would be liable if the plaintiff proved that 'he was requested by the defendants in this action to sell the timber'; the error being that the executors had no power, either under the will or under the law, to either enter into any contract for the sale of the timber or become liable for services rendered to such executors in effectuating any sale of the timber.

"9. That neither the will nor the law of the State of South Carolina having made the executors of this estate liable for services rendered to them as such executors, that the judgment entered on the verdict of the jury was erroneous, and that the charge to the jury by the presiding Judge, it is respectfully submitted, did not correctly state the law.

"10. The Court, it is respectfully submitted, was and is without jurisdiction to hold the executors liable, for that neither the will of Homer H. Peeples nor the law imposes any liability on the executors for such services rendered."

The will in question is printed in the transcript, and on the question of powers of the executors we quote therefrom the following:

"The said executors shall have power and authority to sell any property of my estate, except the said 'Home Place.' in South Carolina during the life of my widow, for such sum or sums of money as, in the judgment of my executors may seem proper as the valuation thereof, at public or private sale, without the order or authority of any Court, and if at public sale on such advertisement and terms as may seem best to them, such property to be sold for cash and/or credit, as the executors may determine. * * *"

The life tenant, the wife of the testator, is dead. She predeceased the testator. So the way was clear for the executors to proceed to sell any of the property of the testator. No stronger language could be used than that which we find in the will to give to the executors the power to sell. Furthermore, power to sell, under the broad terms of this will, carries with it the right, privilege, and power to pay the ordinary expenses connected with such sale. We may further state, in this connection, that the will did not provide any compensation for the executors in handling the estate. In fact, the will provided that they should receive no compensation, but did provide that they should be paid all of their actual expenses out of the assets of the estate. Therefore, the executors had, in our opinion, the power to use a sufficient amount of the assets to pay for this particular work, that is, reasonable commissions to the plaintiff in the case for procuring the sale of said timber. The other questions suggested under these exceptions have, in the main, been answered in our discussion of the other exceptions.

The exceptions are overruled and the judgment of the lower Court affirmed.

490

Mr. Chief Justice Stabler, Mr. Justice Carter, and Messrs. Acting Associate Justices T. S. Sease and A. L. Gaston concur.